UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOBIE DAVIS,                                                    **DECISION AND ORDER**

                            Petitioner,

                                          08-CV-00640(M)

v.

SULLIVAN CORRECTIONAL,

                          Respondent.
_____

        On August 27, 2008, petitioner Jobie Davis, an inmate acting *pro se*, filed a

Petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254 [1].[1]  On November 5, 2008 he

filed an Amended Petition [5], further specifying the grounds upon which he seeks relief. The

parties have consented to proceed before a Magistrate Judge pursuant to 28 U.S.C. §636(c) [9].

For the following reasons, I order that the Petition and Amended Petition be denied.


                        **BACKGROUND**

        Petitioner is alleged to have engaged in sexual intercourse with his minor daughter

(the "victim").  As a result of this conduct, he was charged in a sixteen-count indictment with

four counts of second degree rape (N.Y. Penal Law §130.30(1)), four counts of incest (N.Y.

Penal Law §255.25), one count of attempted second degree rape (N.Y. Penal Law §§110.00 and

130.30(1)), one count of attempted incest (N.Y. Penal Law §§110.00 and 255.25), five counts of

endangering the welfare of a child (N.Y. Penal Law §260.10(1)), and one count of second degree

sexual abuse (N.Y. Penal Law §130.60(2)).   Following a jury trial in Erie County Court (Hon.

Michael L. D'Amico presiding), petitioner was convicted of all counts.

_____

      [1]        Bracketed references are to the CM/ECF docket entries.

The then thirteen-year-old victim resided with her mother until approximately March 2003, when her mother sent her to live with petitioner because she was acting up in school and her grades were poor. T369-371, 395.[2]  According to the victim, at some point in May 2003 petitioner told her to lay on the bed and take off her clothes. T396.  When she asked him "why", he responded "do you want a whopping?" T397.  The victim testified that she was afraid of petitioner because he had hit her in the past, so she complied. T397-398.  Petitioner proceeded to have vaginal intercourse with her. T398.

Petitioner again had vaginal intercourse with the victim approximately two weeks later, and also in June 2003 and February 2004. T399-404.  He also attempted to have vaginal intercourse with her in March 2004. T404.  Sometime thereafter, the victim told her older sister about these incidents, and the sister called their uncle, who called the police. T407-410.

On direct appeal, petitioner argued that the trial court erred in prohibiting him from offering proof that the victim had chlamydia, that the verdict was against the weight of the evidence, that he was deprived of effective assistance of counsel, that he established actual innocence at trial, that he received a harsh and excessive sentence, and that counts of the indictment were duplicitous. *See* Appellate Brief [1-2].  These arguments were rejected by the Appellate Division (People v. Davis, 45 A.D.3d 1351 (4th Dept. 2007)), which also rejected petitioner's motion for reargument or for leave to appeal.  2008 WL 281688 (4th Dept. 2008).

The habeas petition asserts three of the claims raised on appeal, namely that the trial court erred in prohibiting petitioner from offering proof that the victim had chlamydia, that

---

[2]       "T" references the trial transcripts.

he was deprived of effective assistance of counsel, and that the indictment was duplicitous.

Amended Petition [5], Grounds One - Three.


## ANALYSIS

### A.    Standard of Review

A habeas corpus petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of that claim was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. §2254(d)(1),(2).[3]  The state court's "determination of a factual issue . . . shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence".  28 U.S.C. §2254(e)(1).

With that standard in mind, I will consider each of petitioner's arguments.

---

[3]      "'[C]ontrary to' and 'unreasonable application' clauses have independent meaning . . . . A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts . . . . The court may grant relief under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case . . . . The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed . . . that an unreasonable application is different from an incorrect one." Bell v. Cone, 535 U.S. 685, 694 (2002).

**B.      Did the Trial Court Improperly Exclude Defense Evidence?**

                Petitioner argues that he should have been permitted to offer evidence that the

victim had chlamydia whereas he did not. Amended Petition [5], Ground One.  The Appellate

Division rejected this argument, finding that "[c]ontrary to defendant's contention, County Court

did not abuse its discretion in determining pursuant to CPL 60.42 that defendant was not entitled

to present evidence that the victim had contracted chlamydia.  It is uncontroverted that only CPL

60.42(5) applies here, and we conclude that defendant failed to demonstrate that such evidence

was 'relevant and admissible in the interests of justice'".   Davis, 45 A.D.3d at 1351.

                New York's Rape Shield Law,  NY Crim. P. Law ("CPL") §60.42, provides that

"[e]vidence of a victim's sexual conduct shall not be admissible in a prosecution for an offense

or an attempt to commit an offense . . . unless such evidence . . .  proves or tends to prove

specific instances of the victim's prior sexual conduct with the accused . . . or . . .  is determined

by the court . . . to be relevant and admissible in the interests of justice."

                Prior to jury selection, petitioner's counsel sought permission to introduce

evidence that the victim suffered from chlamydia, but had not transmitted it to petitioner.

Petitioner's counsel argued that he was "not offering it for purposes of her sexual activity", but

rather to undermine her credibility.  T11. The prosecutor opposed introduction of this evidence

under the Rape Shield Law, and the following exchange occurred:

> "The Court:  The question is, would he automatically get
> chlamydia if he had sex with her.
>
> [Petitioner's counsel]:  It's a percentage.  There is a percentage of
> time. It's not guaranteed every single time. . . .   The percentage is
> somewhere around 40%.

The Court: Not high enough. . . . .  He can't bring it in unless I get
some evidence that it's a sure fire thing or darn close to it and 40%
is nowhere near sure fire, so her prior sex life doesn't come
including her prior disease." T12-16.

During the trial, petitioner's counsel renewed his request, indicating that his

expert would testify that chlamydia has a medically significant transmission rate of between 32%

to 40%.  T513.  In response, the court stated "[l]egally it isn't [significant] and you aren't getting

it in. . . .  [I]f it's a 95% chance maybe you got something going there, but 1 out of 3, I don't

think so."  T514.

However, the court did permit petitioner to introduce evidence that he had

gonorrhea, whereas the victim did not. T13, 515.  Petitioner's counsel indicated that the

transmission rate of gonorrhea was "very, very high", and the court found that evidence that

petitioner had gonorrhea "has nothing to do with rape shield".  T13-14.  Ultimately, petitioner's

medical expert testified that the transmission rate of gonorrhea from male to female after vaginal

intercourse is "relatively high", between 50 to 90%.  T528.

"[I]t is not the province of a federal habeas court to reexamine state-court

determinations on state-law questions.  In conducting habeas review, a federal court is limited to

deciding whether a conviction violated the Constitution, laws, or treaties of the United States."

Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  "Thus, it is outside the purview of this Court to

determine whether the trial court misinterpreted or misapplied New York's Rape Shield law".

Brink v. Conway, 2010 WL 811542, *7 (W.D.N.Y. 2010)(Telesca, J.).  "This Court therefore is

limited to the question whether the trial court's ruling deprived Petitioner of a fundamentally fair

trial." Id.

Both the Supreme Court (<u>Michigan v. Lucas</u>, 500 U.S. 145, 151-52 (1991)) and the Second Circuit (<u>Agard v. Portuondo</u>, 117 F.3d 696, 702-03 (2d Cir.1997), <u>rev'd on other grounds</u>, 529 U.S. 61 (2000)) have ruled that rape shield laws do not, on their face, violate a defendant's right to confront witnesses or present a defense.  *See* <u>Stapleton v. Greiner</u>, 2000 WL 1207259 (E.D.N.Y. 2000).  I also do not find that the application of the statute here denied petitioner a fundamentally fair trial.  "Whether the exclusion of [this] testimony violated [petitioner's] right to present a defense depends upon whether 'the omitted evidence [evaluated in the context of the entire record] creates a reasonable doubt that did not otherwise exist.'" <u>Justice v. Hoke</u>, 90 F.3d 43, 47 (2d Cir. 1996) (*quoting* <u>United States v. Agurs</u>, 427 U.S. 97, 112 (1976)). *See* <u>Rasmussen v. Filion</u>, 2005 WL 318816, *10 (W.D.N.Y. 2005) (Payson, M.J.), <u>aff'd</u>, 164 Fed. Appx. 56 (2d Cir. 2006).

Given the admission by petitioner's attorney that the transmittal rate for chlamydia is less than 50 percent, I conclude that the trial court's exclusion of evidence that petitioner had chlamydia and the victim did not was proper, since this evidence would not have "create[d] a reasonable doubt that did not otherwise exist". <u>Hoke</u>, 90 F.3d at 47.


**C.**	**Was the Indictment Improperly Duplicitous?**

Petitioner argues that "the multiple counts of the indictment were duplicitous and must be dismissed". Amended Petition [5], Ground Two.  "An indictment is duplicitous if it joins two or more distinct crimes in a single count." <u>United States v. Aracri</u>, 968 F.2d 1512, 1518

(2d Cir.1992). Duplicitous indictments are prohibited by CPL §200.30(1) ("Each count of an indictment may charge one offense only").[4]

The indictment is not duplicitous on its face, since none of the counts expressly allege more than one offense. However, "[e]ven if a count is valid on its face, it is nonetheless duplicitous where the evidence presented to the grand jury or at trial makes plain that multiple criminal acts occurred during the relevant time period". People v. Black, 65 A.D.3d 811, 813 (3d Dept. 2009). Petitioner argues that "[a]ccording to count three, the defendant was charged with endangering the welfare of a minor based on acts alleged to have occurred in May of 2003 . . . . At trial, the testimony was that there was an encounter in May of 2003 . . . and then another encounter two weeks after that but still im May. Count three was obviously duplicitous because there was testimony of two separate crimes occurring within the same time period, to wit May of 2003". Amended Petition [5], Ground Two.

The Appellate Division rejected this argument, finding that "the testimony of the victim did not 'tend[ ] to establish the commission of multiple criminal acts during [the time periods] specified in the indictment,' and thus that testimony did not render the indictment duplicitous". Davis, 45 A.D.3d at 1352. I disagree with that conclusion: the victim testified that petitioner had intercourse with her on two separate occasions in May 2003 (T398-99), which, if

---

[4]	I question whether petitioner's challenge to the state court indictment is viable in a habeas corpus proceeding, since they do not implicate federal constitutional issues. See Apprendi v. New Jersey, 530 U.S. 466, 477 n.3 (2000) ("The Fourteenth Amendment . . . has not, however, been construed to include the Fifth Amendment right to 'presentment or indictment of a Grand Jury'"). In any event, for reasons discussed herein, I conclude that petitioner's challenge is not meritorious.

believed, means that on two separate occasions in May 2003 petitioner endangered the welfare of a child within the meaning of count three of the indictment.

However, the issue is not whether count three was duplicitous, but whether it was *impermissibly* duplicitous. "[T]he doctrine of duplicity . . . must be invoked only when an indictment affects the policy considerations that underlie that doctrine . . . . These include avoiding the uncertainty of whether a general verdict of guilty conceals a finding of guilty as to one crime and a finding of not guilty as to another, avoiding the risk that the jurors may not have been unanimous as to any one of the crimes charged, assuring the defendant adequate notice, providing the basis for appropriate sentencing, and protecting against double jeopardy in a subsequent prosecution." United States v. Margiotta, 646 F.2d 729, 732-33 (2d Cir. 1981). Thus, "a single count of an indictment should not be found impermissibly duplicitous whenever it contains several allegations that could have been stated as separate offenses, . . . but only when the failure to do so risks unfairness to the defendant." Id. at 733.

In this case, the policy considerations underlying the duplicity doctrine have been adequately addressed. Before submitting the verdict sheet to the jury, Judge D'Amico inserted dates on the verdict sheet so that it was clear that count three related to the time period May 1-10, 2003 and count 6 related to the time period May 10-31, 2003. Petitioner's attorney acknowledged that he "would just as soon have the dates". T632. Therefore, petitioner's concern that "it would be impossible to know which crime occurring in May, 2003 the jury was using to convict [him]" (Amended Petition [5], Ground Two) is unfounded.

Petitioner also argues that "counts one and two were simply not proven because there was no testimony that any crime occurred between May 1, 2003 and May 10, 2003 as

-8-

alleged in the indictment".  Amended Petition [5], p. Ground Two.  However, petitioner did not

raise this argument in state court - instead, he argued only that "the verdict with respect to Counts

One and Two was against the weight of the evidence". Petitioner's appellate brief [1-2], p.24.

"[T]he argument that a verdict is against the weight of the evidence states a claim under state

law, which is not cognizable on habeas corpus." McKinnon v. Superintendent, Great Meadow

Correctional Facility, 422 Fed. Appx. 69, 75, 2011 WL 2005112, *4 (2d Cir. 2011) (Summary

Order).

      Moreover, since "time is not an essential element of an offense, the prosecution is

not required to prove the exact date and time the charged offenses occurred".  People v. Erle, 83

A.D.3d 1442, 1444 (4th Dept. 2011).  Thus, "the variance between the dates alleged in the

indictment and the dates established at trial does not render the evidence legally insufficient to

support the conviction".  Id.


**D.     Did Petitioner Receive Effective Assistance of Counsel?**

      Petitioner argues that his trial counsel was ineffective in that he failed to request

copies of the studies relied upon by the prosecution's expert, failed to present a favorable lab

report demonstrating that there was no physical evidence linking petitioner to the crimes, and

made requests to charge after the jury began its deliberations.  Amended Petition [5], Ground

Three. The Appellate Division rejected petitioner's claim of ineffective assistance of counsel,

finding that "defendant received meaningful representation".  Davis, 45 A.D.3d at 1352.

"A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction . . . has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." Strickland v. Washington, 466 U.S. 668, 687 (1984). "*Strickland* qualifies as 'clearly established Federal law, as determined by the Supreme Court of the United States'".  Williams v. Taylor, 529 U.S. 362, 391 (2000).  Thus, petitioner is entitled to habeas relief only if the decision rejecting his ineffective-assistance claim was either "contrary to, or involved an unreasonable application of" clearly established Supreme Court precedent. Strickland, supra.

Petitioner " faces the heavy burden of showing ineffective assistance set forth in Strickland . . . , enhanced by the added hurdle posed by the highly deferential review accorded state court adjudications under the [AEDPA]".  Eze v. Senkowski, 321 F.3d 110, 112 (2d Cir. 2003).  However, "if certain omissions cannot be explained convincingly as resulting from a sound trial strategy, but instead arose from oversight, carelessness, ineptitude, or laziness, we would find the quality of representation sufficiently deficient to grant the writ".  Id.  Thus, "[a]s a general rule, a habeas petitioner will be able to demonstrate that trial counsel's decisions were

objectively unreasonable only if 'there [was] no . . . tactical justification for the course taken.'"

Lynn v. Bliden, 443 F.3d 238, 247 (2d Cir. 2006), cert. denied, 549 U.S. 1257 (2007).

Each of petitioner's arguments will be considered in light of this standard.

### 1.      Failure to Request Studies Relied Upon by the Prosecution's Expert

The prosecution expert, William Canavan, M.D., testified that the victim's medical records demonstrated no injury to her vaginal area.  T569.  Dr. Canavan testified that it was "very uncommon" to find physical injury to a child that has been sexually assaulted.  T572. In support of this statement, he referenced two published studies over petitioner's counsel's objection. T572-574.

As argued by respondent, "[t]he record does not indicate that trial counsel did not have copies of the studies in question or was not familiar with them." Respondent's Memorandum of Law [11], p. 19.  Moreover, petitioner's counsel objected to Dr. Canavan's reference to these studies and got him to concede that the absence of injury was equally "consistent with rape or no rape", and that in order to make such a determination a physician must rely on what the child says.  T573, 588.

### 2.      Failure to Introduce Forensic Testing

Petitioner also argues that the forensic testing in this case revealed no semen in the victim's vagina, that nine hairs were present in her pubic hair combings but not submitted for comparison, and that there was no "apparent significant 'evidence'" from the victim's fingernail scrapings.  Amended Petition [5], p. 5.  He argues that "[t]he defense counsel did 'not' present

-11-

this to the grand jury and it would have [*sic*] more favorable for the defendant at trail [*sic*]." <u>Id</u>., p. 6.   However, this specific argument was not presented to the Appellate Division in petitioner's direct appeal.  *See* Appendix Ex. B, pp. 25-28.

"A claim is exhausted if it has been 'fairly presented' to the state court. . . . To fairly present his claim, the petitioner must have set forth for the state court all the essential factual allegations and legal premises he now asserts in federal court." <u>Narrod v. Napoli</u>, 2011 WL 378244, *25 (W.D.N.Y. 2011)(Bianchini, M.J.)(*quoting* <u>Daye v. Attorney General of State of New York</u>, 696 F.2d 186, 191 (2d Cir. 1982)).

"Because [petitioner] no longer has remedies available in state court, his claims must be 'deemed' exhausted. . . . However, the mechanism by which the claims are constructively exhausted also creates a State-court procedural default." <u>Id</u>., at *26.  Any collateral review of this claim would also be subject to dismissal because the claim could have been presented on direct review, but was not.  *See* <u>id</u>.  "Thus, habeas review is barred unless [petitioner] can establish cause and prejudice for the default, or demonstrate that failing to consider his federal claims will result in a 'fundamental miscarriage of justice'. . . , which requires a showing of 'actual innocence.'" <u>Id</u>   Since petitioner has demonstrated neither good cause for his default and  prejudice resulting therefrom, nor that failure to consider his claim will result in a fundamental miscarriage of justice, I need not reach the merits of this argument.

Moreover, even if this argument had been properly raised, I would deny it. Contrary to petitioner's suggestion, his counsel repeatedly referenced the absence of physical evidence against him.  T695-696.

### 3.      Failure To Timely Request a Jury Charge

Petitioner argues that his trial counsel was ineffective for requesting the court to charge that if they acquitted petitioner of the rape and attempted rape charges, they would also have to acquit on the corresponding incest and endangering charges. T774-775.  Although the court was not pleased that petitioner's counsel made this request after the jury began its deliberations, it denied the request. T775.  Nevertheless, any necessity for this charge was rendered moot by the fact that the jury did not acquit petitioner of any of the rape or attempted rape counts.

### E.      DNA Testing

In response to respondent's answer and memorandum of law, petitioner argues that he "never got a response to the 440.30 [motion] on DNA testing".  Petitioner's Reply [12].[5] Among the papers attached to the petition is a motion to vacate the judgment dated August 4, 2008 in the state court proceeding seeking "an order pursuant to N.Y. Crim. Proc. Law 440.30. . . directing that [DNA] testing be performed on [certain] evidence".  Petition [1], pp. 3-7.

Following the filing of the petition, Hon. Charles J. Siragusa concluded that the "petition does not state any grounds" [4], p. 1.  Thus, he directed petitioner to file an Amended Petition "wherein he re-states what is included in the petition . . . and states . . . every ground he seeks to raise in this proceeding for a writ of habeas corpus".  Id., p. 1.  Pursuant to Judge Siragusa's order, petitioner submitted an Amended Petition with his "specific ground or claims",

---

[5]      I assume that he is referring to the fact that respondent did not address this issue in its answer and memorandum of law, rather than that the Appellate Division failed to respond to this motion.

but did not include any claim regarding the denial of his CPL 440.30 motion.  Thereafter, Judge

Telesca ordered that "the operative petition . . . shall consist of both the petition . . . and amended

petition *which sets forth petitioner's claims herein*" [6] (emphasis added).  Therefore, I conclude

that this ground was not raised by petitioner.

        Even if it had been properly raised, petitioner has not established that this claim

was exhausted, nor is it cognizable on habeas review. *See* <u>Wesley v. Alexander</u>, 2010 WL

2710609, *7  (E.D.N.Y. 2010) ("Wesley challenges the state court's denial of his request for

DNA and fingerprint analysis.  Habeas relief is a vehicle for defendants to challenge the validity

of their conviction and sentence.  Wesley's claim, if granted, would not 'necessarily demonstrate[

] the invalidity of the conviction,' but rather may present a ground upon which to do so . . . .

Accordingly, this is not a cognizable basis for federal habeas relief").


**F.**       **Certificate of Appealability**

        For a Certificate of Appealability to issue, the petitioner must make a "substantial

showing of the denial of a constitutional right ." 28 U.S.C. §2253(c)(2).  To make the required

"substantial showing",  the petitioner must establish that "reasonable jurists could debate

whether . . . the petition should have been resolved in a different manner or that the issues

presented were adequate to deserve encouragement to proceed further."  <u>Rhagi v. Artuz</u>, 309 F.3d

103, 106 (2d Cir. 2002) (per curiam), <u>cert</u>. <u>denied</u>, 538 U.S. 950 (2003).  Petitioner has made no

such substantial showing of the denial of a constitutional right in this case.  Accordingly, I

recommend that a Certificate of Appealability not be issued.

**CONCLUSION**

For these reasons, I order that the Petition [1] and Amended Petition [5] for a writ of habeas corpus pursuant to 28 U.S.C. §2254 be denied.  Because petitioner has failed to make a substantial showing of a denial of a constitutional right, I also order that a Certificate of Appealability not be issued.

**SO ORDERED**.

Dated: August 29, 2011

/s/ Jeremiah J. McCarthy_____
JEREMIAH J. MCCARTHY
United States Magistrate Judge